Aymen A. Aboushi, Esq.
The Aboushi Law Firm, PLLC
1441 Broadway, 5th Floor
New York, NY 10018
Tel. 212.391.8500
Fax 212.391.8508
Aymen@Aboushi.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GARDEN STATE ISLAMIC CENTER, a New Jersey Non-Profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VINELAND, DALE JONES individually and in his official capacity as City of Vineland Health Director, GARY LUGIANO, individually and in his official capacity as Senior Registered Environmental Health Specialist for the City of Vineland, CARMEN DI GIORGIO, individually and in her official capacity as City of Vineland Tax Collector, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Civil Action No.: |

This case is about religious liberties and the discriminatory and unequal practices of the City of Vineland. The Garden State Islamic Center is a New Jersey not for profit, 501(c)(3) charitable corporation of the State of New Jersey with offices in Vineland, New Jersey. Despite years and thousands of dollars spent to appease the Defendants' unlawful and discriminatory requirements, Defendants continue to act in violation of the Constitutions of the United States and New Jersey, as well as the Federal law explicitly prohibiting religious discrimination by discriminating against the Garden State Islamic Center and imposing an unlawful burden on the practice of their faith. Garden State Islamic Center was forced to bring a prior action against the Defendants when they unlawfully denied it its right to build its religious house of worship. That matter settled with the Islamic center being permitted to build its Mosque. Seemingly having found another way to unlawfully deny and obstruct the Islamic center its' right to complete its Mosque, Garden State Islamic Center now comes before this Honorable Court to have the Defendants comply with the Constitutions of the United States and New Jersey, and end its unlawful and discriminatory conduct inhibiting religious liberties guaranteed in this great Country and State.

## **INTRODUCTION**

Plaintiff brings this action pursuant to the United States Constitution, Religious Land Use & Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc *et seq*., and the Declaratory Judgment Act, 28 U.S.C. Section 2201 to enjoin the City of

Vineland, City of Vineland Health Director Dale Jones and City of Vineland Senior Registered Environmental Health Specialist Gary Lugiano (collectively "City") from unreasonably refusing to issue a certificate of occupancy to Plaintiff, Garden State Islamic Center ("GSIC") in order to allow the GSIC to open the recently constructed second-floor of its existing house-of-worship and religious education building located in Vineland, Cumberland County, New Jersey, also known as Block 2008, Lots 6 & 17 as identified on the City of Vineland Tax Map. As demonstrated below, even though the City issued a building permit for the construction of the GSIC and issued a septic permit, they now unreasonably refuse to issue a certificate of occupancy from the very same building. In fact, Defendants unreasonably and unilaterally rescinded the pre-construction permits for GSIC after the construction was done. Defendants have thus engaged in a pattern and practice of discriminatory conduct, which extends over the course of a decade, aimed at halting the operation of GSIC's house-of-worship and religious education building.

Moreover, and consistent with the discriminatory conduct complained of, Defendants unlawfully issued a property tax bill to GSIC for nearly $50,000, despite the fact that GSIC is a tax-exempt religious organization. Defendants have known that GSIC is a tax-exempt organization throughout its existence since and GSIC has provided proof thereof. Nonetheless, Defendants issued a tax bill for nearly $50,000 for the year 2015 and refuse to rescind it and are engaging in collection activity, despite their knowledge that GSIC is a tax exempt organization.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§§ Sections 1331, 1343(a)(4), 42 U.S.C. §2000cc et seq. ("RLUIPA"), The Equal Protection Clause of the 14th Amendment to the United States Constitution; and 42 U.S.C. § 1983, which provides redress for the deprivation, under color of state law, of rights, privileges and immunities secured to all citizens and persons within the jurisdiction of the United States by the Constitution and laws of the United States.

2. Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. Section 1391(b) as all acts complained of occurred within this District.

3. Plaintiff seeks declaratory and injunctive relief against the Defendants pursuant to 28 U.S.C. §§ 2201 and 2202 and injunctive relief pursuant to 42 U.S.C. § 3613(c)(1).

4. In addition, 28 U.S.C. § 1367 confers supplemental jurisdiction on this Court over Plaintiff's related state law claims.

## PARTIES

5. Garden State Islamic Center is a New Jersey, not for profit, 501(c)(3) tax exempt corporation, whose primary purpose is to receive, administer, invest and distribute funds for scientific, educational and charitable purposes. Its principal place of business, and the property that is the subject of this action, is located at 700 Bird Street, Vineland,

New Jersey 08360 also known as Block 2008, Lots 6 and 17 on the City of Vineland Tax Map.

6. The City of Vineland is a municipal corporation and organized under the law of the State of New Jersey with its principal office located at 640 East Wood Street, Vineland, New Jersey.

7. Dale Jones is employed by Defendant City of Vineland as the City of Vineland Health Director who has personal knowledge of and involvement with the underlying facts and events in this action and personally participated in them.

8. Gary Lugiano is employed by the City of Vineland as the City of Vineland Senior Registered Environmental Health Specialist who has personal knowledge of and involvement with the underlying facts and events in this action and personally participated in them.

9. Carmen Di Giorgio is the tax collector for the City of Vineland.

10. Defendants John and Jane Does 1-20 are fictitious parties representing presently unknown employees and/or representatives of the City of Vineland who may have knowledge or involvement with the underlying facts and events in this action and participated in the unlawful conduct as alleged herein.

## STATEMENT OF FACTS

11. In 2009, GSIC initially applied to the City of Vineland Planning Board (the "Planning Board") for preliminary and final major site plan approval, a conditional use permit, and bulk (or "C") variances for the construction of a house of worship with related religious facilities on property identified as Block 2008, Lots 6 and 17 on the Vineland City Tax Map (the "Property").

12. At that time and at all relevant times specified in this Complaint, GSIC's use of the Property as a religious house of worship was permitted as a conditional use in the City of Vineland Zoning Ordinance.

13. Prior to submitting its' formal site plan application to the Planning Board, GSIC submitted an advisory application to the Planning Board's professional consultants to ascertain what, if any, specific concerns that the Board may identify with respect to GSIC's proposed site plan.

14. In a written response to the advisory application submitted in 2009, the City's professional consultants recommended certain site plan revisions, including the construction of a new access road to the proposed house of worship, all of which GSIC agreed to.

15. On August 12, 2009, the Planning Board held a hearing on GSIC's formal site plan application at which members of the public voiced their concerns with the placement of an Islamic house of worship in the community even though GSIC's

proposed use indisputably was and is a permitted conditional use of the Property under the City of Vineland Zoning Ordinance.

16. The Planning Board ultimately denied GSIC's original site plan application following the August 12, 2009 hearing.

17. Subsequently, GSIC filed a Complaint in lieu of Prerogative Writs in the Law Division of the New Jersey Superior Court (Cumberland County) under Docket No. L-000891-09 against the Planning Board seeking the reversal of the Planning Board's denial of GSIC's site plan application.

18. Subsequent to the filing of the September 14, 2009 Complaint in lieu of Prerogative Writs, GSIC and the Planning Board settled that litigation and GSIC submitted a new site plan application to the Planning Board for its proposed house of worship.

19. As early as 2010, the City of Vineland acknowledged that GSIC was a 501(c)(3) tax exempt, not-for-profit charitable entity and refunded development review fees to GSIC based on its 501(c)(3) status.

20. On January 12, 2011, GSIC received final major site plan approval from the City of Vineland Planning Board to construct a three-level, 61,540 square foot house of worship consisting of: a) a 9,563.25 square foot basement level containing a bathroom, kitchen, mechanical room and storage space; b) a 30,304.45 square foot first floor level containing a men's prayer hall, women's prayer halls, multi-purpose hall, library, media

rooms and various meeting rooms and offices; and c) a 21,670.45 square foot second floor level containing multiple lecture rooms, offices, a library, meeting room and other miscellaneous space on the Property (the "2011 Site Plan Approval").

21. The 2011 Site Plan Approval evidences a seating capacity of **220** persons onsite for the 61,540 square foot building that was approved for the GSIC.

22. In 2012, the GSIC decided to substantially **reduce** the size of the building that was approved by the 2011 Site Plan Approval.

23. On June 26, 2012, the GSIC received an administrative site plan approval from Vineland Senior Planner Stephen Hawk to instead construct a house of worship with no basement level, a 29,745 square foot first floor level and an 18,853 square foot second floor level (the "2012 Amended Site Plan Approval").

24. The building that was **actually** built for the GSIC in 2012, and which exists today, has a building footprint of only 8,393 square feet, which is drastically smaller than the building that was approved by the 2011 Site Plan Approval or the 2012 Amended Site Plan Approval.

25. On September 15, 2011, GSIC obtained an individual septic permit from the Vineland City Health Department that was designed to accommodate a maximum sanitary sewage flow capacity of 3,000 gallons per day.

26. The anticipated sewage flow from the GSIC building was estimated to be approximately 1500 gallons per day.

27. On November 15, 2012, Defendants sent a letter to GSIC's contractor advising that the septic system servicing the as-constructed GSIC building was "inspected and approved" as per the land use codes and regulations.

28. A temporary certificate of occupancy was issued shortly thereafter by the City's building department, thus allowing the GSIC to open its one-level, approximately 8,393 square foot facility for religious education and worship.

29. In March of 2016, GSIC began applying for permits to construct a second floor level that would have the same 8,393 square feet of area as the existing first floor.

30. One of the permits that GSIC required for the construction of the second floor was a new septic system permit evidencing that the existing septic system onsite could accommodate the new second-floor area being constructed.

31. The second floor construction consists of lecture rooms and/or religious education classrooms, offices, a library, mechanical/storage space, and men's and women's restrooms identified as "locker rooms" and "toilet rooms."

32. The men's and women's "locker rooms" do not contain showers, and contain 2 toilets and 2 sinks each, similar to what a customary restroom would contain.

33. All of the uses indicated on the second-floor construction plan were expressly approved by the Vineland City Planning Board as part of the 2011 Site Plan Approval.

34. On April 4, 2016, Mr. Lugiano wrote a letter to GSIC erroneously advising that the second floor construction "fit out" plan containing the rooms "were not included in the original septic system design".

35. He then stated that the "original septic system was designed for a 500 seat mosque."

36. A 500 seat mosque would require a much larger structure than GSIC's existing 8,400 square foot building.

37. This assertion in Mr. Lugiano's letter led GSIC and its contractors to the belief that Mr. Lugiano did not know the existing size or use of the GSIC's building. In that letter he also incorrectly indicated that showers are included in GSIC's proposed second-floor. No showers are proposed for the "locker rooms" indicated on the second-floor plan.

38. Mr. Lugiano concludes his letter by stating his offices "belief" that GSIC has exceeded the original septic system design capacity and requiring that GSIC obtain a "flow determination" from the New Jersey Department of Environmental Protection's Bureau of Non-Point Pollution Control."

39. In reality, GSIC's septic system did not exceed 1,500 gallons or exceed the use in the approved septic system for which Vineland issued a permit.

40. The current and approved occupancy of the GSIC is **220** persons.

41. Application of simple math releveled that at the standard three gallons per person per day for a maximum of 220 persons a day, yielded 660 gallons of water per day.

42. GSIC does not maintain 220 visitors each day. At most, perhaps 80 worshipers attend services for two hours on Fridays.

43. The City of Vineland's determination that GSIC exceeded 1,500 gallons per day is significant because it used that erroneous fact to deny GSIC a final Certificate of Occupancy and required it to apply to the State of New Jersey for a permit to install a significant and costly septic system and waste management system.

44. Any water usage under 2,000 gallons does not require State Approval, permits or a significantly costly upgrade to the septic system.

45. On several occasions the State informed the Defendants that this is a local issue, not a State issue. Defendants nonetheless continue to push GSIC in the direction of the State requirements.

46. On April 13, 2016, the GSIC's project manager Richard Oberman, PE, PP, CME wrote a letter to Mr. Lugiano in response to his April 4, 2016 letter to the GSIC. Mr. Oberman states that the original septic system design was for a "maximum seating capacity of 500 persons" and "a 500 seat church (or prayer room meeting areas) was never proposed or approved by Planning or Zoning." Mr. Oberman goes on to state that the GSIC:

> "has operated with associated prayer rooms, offices, classrooms, kitchen area, etc. on the original first floor. Temporary partitions and chairs are set up in the Foyer area to accommodate the classroom areas. The classrooms that occupy the Foyer, will be relocated to the newly constructed second floor. The Foyer can then be used as originally designed as a meet and greet area. Again there is no proposed change in seating, capacity or use. During times of prayer, all persons are in the prayer rooms, and when prayer has been dismissed, other rooms are available for use."

47. On April 21, 2016 Mr. Lugiano had an e-mail conversation with Mark Miller, Environmental Specialist 3 at the New Jersey Department of Environmental Protection's Bureau of Non-Pollution Control.

48. No representatives of the GSIC nor any of the GSIC's contractors were included in this e-mail conversation.

49. In his initial e-mail to Mr. Miller, seeking to get the State involved on false pretenses, Mr. Lugiano references the GSIC's requested septic approval for the second floor fit-up of the GSIC building. He then goes on to discuss the 2011 Site Plan Approval and the square footages that were approved by the Planning Board for the basement, first floor and second floor equaling a total of over 61,000 square feet as opposed to the approximately 16,800 square foot building the GSIC actually proposed, including the second-floor construction.

50. Mr. Lugiano also seems to characterize the existing "warming kitchen" area in the GSIC building as a commercial kitchen that produces waste akin to a kitchen in a commercial facility such as a restaurant.

51. That characterization is false as the warming kitchen was approved by the Planning Board in 2011.

52. What Mr. Miller did not know based on the purposefully misleading and incorrect information provided by Mr. Lugiano was that the GSIC building, including the second-floor construction, would contain only 16,800 square feet of total floor area and an 8,393 square foot building footprint, which is the same building footprint that existed prior to the construction of the second floor. Mr. Miller was also unaware that the existing first-floor "warming kitchen" referred to by Mr. Lugiano only contains a microwave, a small stove, a dishwasher and refrigerator and does not contain **any** commercial cooking facilities akin to a restaurant kitchen.

53. On April 22, 2016 Mr. Lugiano wrote a second letter to the GSIC asserting that the existing septic system "is no longer in compliance with the original approval issued by this department" based on the "current unpermitted uses of the facility (kitchen, offices, classrooms, etc.)".

54. This was because Mr. Lugiano was purposefully applying arbitrary and erroneous water flow calculations in an effort to unlawfully deny GSIC their final certificate of occupancy.

55. Mr. Lugiano concludes his letter by again stating that his office "will have no further involvement until a [flow] determination is made" by the NJDEP-BNPC. Although aware by this point of the 2011 Site Plan Approval, Mr. Lugiano incorrectly

states in his letter that the uses within the GSIC building, including classrooms, offices and the like were "unpermitted".

56. Also, based on his April 21, 2016 e-mail conversation with Mr. Miller of the NJDEP-BNPC, it appears Mr. Lugiano is referring to an approximately 60,000 square foot building in his letter, and not a building approximately **25%** of that size which is **actually proposed** by the GSIC.

57. On May 3, 2016, the GSIC's project architect David Manders wrote to Vineland City Health Department Director Dale Jones in response to Mr. Lugiano's April 22, 2016 letter. In that e-mail, Mr. Manders states:

> "There is a misconception in these documents that needs to be remedied, and it is as follows:
>
> What exists at the site is a two-story building with a footprint of 8,393.12 square feet. There is no basement. The first floor is finished and the applicant is seeking to finish the second floor. The numbers outlined in Gary Lugiano's email of April 21, 2016 do not reflect at all what is built or what the applicant has sought building department approval for. The applicant is seeking approval to finish the second floor of this building only. If (and when) the applicant seeks to do additional construction, permits and approvals will need to be obtained. Our position is simple…to determine if the septic system that was installed previously is sufficient to allow for the finishing of the second floor in conformance with the documents prepared by our office. It is not the applicant's desire to construct the 61,538.15 sf building noted in Gary's email. While the approved site plan indicates a building of this magnitude, the applicant has not sought approval for permits to construct this building (which was projected to be accomplished in multiple phases and may or may not ever be built). The applicant fully realizes that any future applications for building additions will most likely require an upgrading of the current septic system. I would hope that this clarification finds its way to the NJ

> Department of Environmental Protection so that a determination can be made based on the actual conditions that exist and are proposed. As always, please do not hesitate to contact me with any questions.

58. Following this correspondence, and in an attempt to resolve this issue, GSIC agreed to close out any and all open construction permits that would allow for the future growth of the GSIC building.

59. GSIC also agreed to provide Mr. Lugiano and the Vineland City Health Department was an "as built" plan of the GSIC building and the flow calculations associated with the existing and proposed rooms on both floors.

60. GSIC was also assured at a May 25, 2016 meeting with City officials, including Dale Jones and Patrick Finley, that if it closed out its existing permits for future construction and complied with the Health Department's requests regarding flow calculations, the septic permit would be issued by the Health Department.

61. On June 8, 2016, Mr. Oberman sent a revised flow calculation spreadsheet to Mr. Lugiano for his review and approval, which included all of the existing and proposed rooms as well as the square footages associated with each, for the GSIC building.

62. The total estimated gallons per day of sewage flow based on Mr. Oberman's calculations was 1,486, well below the 2,000 gallons per day threshold for local approval of the GSIC's septic system.

63. In compliance with Mr. Lugiano's previous request, GSIC sent a letter to the City's Construction Official, which was received by the City's Health Department on May 25, 2016, that stated the following, in relevant part:

> "It is our [the GSIC] intention to close our outstanding permit 13-119. The work on the first floor of our existing building is complete. It at some future time, we choose to proceed with additional work on the first floor or for any other phase of our facility, we recognize that we will need to apply for and obtain separate permits. With this letter, we are submitting an application for a Certificate of Occupancy for the first floor of our building.
>
> We have made a separate application for permits to fit out the second floor of our existing building. We understand that permit will be issued upon the closing of the permit for the first floor and payment for permits for the second floor."

64. On June 9, 2016, Mr. Lugiano sent another e-mail to Mr. Miller at the NJDEP-BNPC and apparently forwarded Mr. Oberman's June 8, 2016 letter containing his most recent flow calculations for the GSIC building. Again, Mr. Lugiano did not copy any representatives of the GSIC nor did he copy any members of the GSIC's project team on this e-mail.

65. In his e-mail, Mr. Lugiano indicates that they are the flow calculations for "the Islamic Church we spoke about previously."

66. He also emphasizes the existing "kitchen" within the GSIC building. Once again, Mr. Lugiano did not attach or reference plans indicating the **correct** size of the

GSIC building and it does not appear Mr. Lugiano **ever** communicated the correct size of the GSIC's building, and the true nature of the rooms within the building, to Mr. Miller.

67. Notwithstanding the plans and facts establishing otherwise, Vineland continued to misrepresent the structure, use, and occupancy of GSIC to the State, withholding the septic permit and certificate of occupancy, and induce the State to impose requirements for a bigger capacity than the ones used by GSIC.

68. Indeed, the water flow calculations for the use of the facility used calculations for a commercial kitchen, despite the presence of a small warming kitchen at the facility.

69. GSIC was being held to higher standards for the septic system than was in the plans, previously approved by Vineland, simply to discriminate against them and prohibit their lawful expansion.

70. What is more, the square footage does not matter for septic planning purposes.

71. Rather, the operative statistic is the maximum amount of people permitted at the facility multiplied by three gallons per person. This simple equation, previously used by Vineland in approving the original septic system, yields a simple water flow per day well below the 2,000 gallon limit that would then require State action and approval.

72. As long as Vineland continues to incorrectly and discriminatorily insist to the State that the gallons per day was over 2,000, the State would impose burdensome requirements that were both cost-prohibitive and unnecessary.

73. This caused the GSIC to not be able to grow its facility as it should be permitted to and the Defendants to unlawfully deny it a certificate of occupancy.

74. In response to Mr. Miller's previous e-mail, Mr. Lugiano fails to correct Mr. Miller's assumption that the GSIC's numbers were based on the approximately 61,000 square foot building approved via the 2011 Site Plan Approval.

75. Instead, Mr. Lugiano falsely and maliciously claims that Mr. Oberman was "working backwards" (i.e. reverse engineering) his calculations to say under 1,500 gallons per day of waste flow.

76. He then goes on to state that the "kitchen waste" from the GSIC building will amount to an **additional** 1,480 gallons per day along with an **additional** 120 gallons per day resulting from a "mop sink", bringing the total gallons per day of flow to 3,086 in Mr. Lugiano's estimation.

77. Again, despite knowing that GSIC had nothing more than a small warming kitchen that was not in use for the vast majority of the time, he imposed the outflow projections for a commercial kitchen to discriminatorily raise the water outflow so that the State requirements for a commercial facility would be imposed, including obtaining new

permits from the State and installing a significantly larger (and prohibitively expensive) septic system and waste management system for the land use.

78. Moreover, under the false and discriminatory flow calculations perpetuated by Vineland, GSIC would have to propose, install, and maintain a waste water treatment facility that is not only prohibitively expensive, but also not needed in light of the stated and approved use.

79. No other secular or religious group has had these requirements imposed upon them by Vineland.

80. No other secular or religious group has had these water flow calculations imposed upon them as Vineland has imposed on GSIC.

81. No other secular or religious group has had their pre-approved septic permit unilaterally rescinded after it was issued and after construction was complete without any due process.

82. No other secular or religious group has had their certificate of occupancy withheld in this fashion.

83. The water flow calculation requirements imposed by the Defendants is a novel way to use a land use regulation to unlawfully deny GSIC its lawful existence on the land.

84. In essence, Vineland was using false information and discriminatory conduct targeting GSIC in an effort to limit their growth.

85. Having an 8,000 square foot house of worship was only permitted after GSIC brought legal action.

86. Defendants have now changed tactics and used the septic system and associated permit process in the land use of GCIC's property in a discriminatory and burdensome fashion process to deny GSIC the permits to grow their facility.

87. Mr. Lugiano sent a letter to the GSIC on June 15, 2016 advising that:

> "It is our final determination that, **although Mr. Oberman's figure of 1,486 gpd appears accurate**, he did not account for kitchen waste (5 gpd/person) and the mop sink (120 gpd) located on the second floor. Adding kitchen waste for 296 individuals adds an additional 1,480 gpd. Including the mop sink, the total daily volume of sewage has been determined to be 3,086 gpd. Since these activities were not included in the original system design, they are subject to regulation under the current version of NJAC 7:9a. The accuracy of these figures have been confirmed by Mr. [Mark] Miller". (Emphasis added).

88. Mr. Lugiano also indicates in tthat letter that he has unilaterally rescinded all approvals that had previously been issued for the GSIC's septic system.

89. This revocation was unlawful, discriminatory, not based on any lawful principles, and without any due process.

90. He also directs GSIC, a simple religious facility, to apply to the NJDEP-BNPC for a Pollutant Discharge Elimination System permit within thirty (30) days despite there being no need for it.

91. In one last attempt to clarify to Mr. Lugiano and the City's Health Department the correct size of the GSIC's building with the second-floor construction, as

well as to further detail that the projected sewage flow from the building would be under 2,000 gallons per day, the GSIC employed the services of Stephen Nardelli, PE, PP, CME of Fralinger Engineering to provide a "second opinion" and independently analyze the projected sewage flows from the GSIC's building.

92. On July 25, 2016, Mr. Nardelli sent a letter to Mr. Lugiano indicating that he reviewed the correct architectural floor plans for the existing first floor and proposed second-floor "fit out" (Mr. Nardelli also attached said plans to his July 25, 2016 letter) and arrived at a total projected sewage flow of 1,442 gallons per day.

93. Nardelli's letter also cites to the exemption for eating areas and cafeterias inside religious centers contained within the NJDEP's definition of a "commercial food service activity" at N.J.A.C. 7:9A-2.1, which is applicable to septic systems.

94. Mr. Nardelli also enclosed pictures of the GSIC's existing first-floor "warming kitchen" with his letter which shows that this room only contains typical residential kitchen appliances including a microwave, a small oven (with no stove), a dishwasher and a refrigerator.

95. Mr. Nardelli concludes his letter by stating that no approvals from the NJDEP would be required in his professional opinion. Mr. Nardelli even offers to install a flow meter on the building's water supply well to verify that the flows from the GSIC's building will not exceed 1500 gallons per day.

96. Without any basis, Defendants nonetheless continue to assert that GSIC will produce over 2,000 gallons of waste per day and using that erroneous proposition to deny GSIC a certificate of occupancy.

97. In order to justify their erroneous water flow calculations, ostensibly used to hide their true intention of discriminating against GSIC and denying its religious practices, the Defendants used water flow calculations that are simply not applicable to GSIC and have never been imposed upon other religious and secular institution.

98. This included imposing an allotment of water for a small mop sink akin to a hair salon.

99. It also includes allocating 10 gallons per day, per person for students, for 224 students, even though there is no school at GSIC other than a Sunday school, which is not occupied by more than a teacher and a few students once a week for a few hours.

100. Another example of the erroneous math and discriminatory application of laws by the Defendants is allotting a commercial kitchen allotment for the small warming kitchen located at the GSIC.

101. In fact, Defendants admitted that they believed GSIC would use under 2,000 gallons per day, but nonetheless continued to push the false narrative to the state to invoke State requirements even though they did not apply.

102. The State told the Defendants that it was up to the Defendants to make the decision regarding the 2,000, and that the GSIC's usage was not enough to invoke the State's jurisdiction.

103. This conduct is discriminatory and unequal application of the land use regulations for the property.

104. Indeed, a similarly situated Christian Church was not subject to the same requirements, and in fact, received more favorable treatment.

105. Upon information and belief, the Cumberland County Department of Health has within the last 18 months approved a septic system for the "All The Nations Assembly Church of God", located at 659 Landis Avenue in Deerfield Township, Cumberland County, which is a substantially **larger** facility than GSIC's house of worship/religious education building that can seat 470 people, also contains classrooms, a nursery, offices and has an area identified as a "future kitchen" as indicated on the approved building plans for that church.

106. This Church based its septic flows on a calculation of 3 gallons per day, which calculation was accepted by the Cumberland County Department of Health and this Church was thus not required to obtain a NJPDES Permit and a septic permit was issued locally by the County.

107. This Church also has a full time nursery and daycare, kitchen, Sunday school, kitchen, and 500 members, but was still adjudicated to have less than 2,000

gallons per day waste and permitted to use a septic system without State involvement or waste management systems.

108. GSIC, on the other hand, with less than half as many occupants, no daily school or nursery, and a Sunday school attended by a handful of children, a simple warming kitchen, was determined by the Defendants have a water usage of over 3,000 gallons per day, requiring State involvement, a waste management plan and treatment facility.

109. Based on the above facts, the Defendants' actions are discriminatory in nature and are intended to prevent the GSIC from permanently opening and operating its house of worship/religious education building through the discriminatory application of land use regulations, in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. 2000cc, et seq. ("RLUIPA") and the Constitutions of the United States and New Jersey.

110. Based on the above faces, the Defendants' actions are arbitrary, capricious and unreasonable and do not serve any legitimate, rational governmental purpose under the Fourteenth Amendment to the United States Constitution.

111. Based on the above facts, Defendants impose an unreasonable and unequal burden upon GSIC.

112. The GSIC's building is a "religious institution" within the meaning of 42 U.S.C. 2000cc et seq.

113. The effect of the Defendants' actions thus far, including their refusal to issue the requested septic permit to GSIC, is to discriminate against the GSIC based on religious affiliation and to treat the GSIC on less than equal terms with a non-religious institution in violation of RLUIPA, as well as the New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 et seq.), the New Jersey Civil Rights Act (N.J.S.A. 10:6-1 et seq.), and under the New Jersey and United States Constitutions.

114. The effect of the Defendants' conduct is to unduly restrict the GSIC's use and development of its land in violation of 2 U.S.C.2000cc-3(g) and 42 U.S.C. 2000cc-5(5) of RLUIPA.

115. Defendants have acted under color of state law in failing to issue a septic permit to GSIC with the purpose and effect of discriminating against GSIC solely because of religious beliefs and/or affiliation.

116. Defendants have denied GSIC due process of law by the arbitrary manner in which it has treated GSIC in refusing to consider GSIC's evidence in support of the issuance of a septic permit, let alone issue the requested permit.

117. Defendants have utilized and are utilizing their enforcement powers to threaten, intimidate, harass and coerce the GSIC after they have exercised their rights under RLUIPA, as well as the New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 et seq.), the New Jersey Civil Rights Act (N.J.S.A. 10:6-1 et seq.), and under the New Jersey and United States Constitutions.

118. Defendants are intentionally and maliciously harassing, intimidating and interfering with the GSIC and persons associated with the GSIC with the intent of preventing the GSIC from opening and operating the second-floor “fit out” of its existing religious facility.

119. Indeed, apparently having religious instruction at GSIC, one a week, for a few hours on a Sunday, despite not increasing the approved occupancy of GSIC, is something the Defendants are trying to prevent by employing discriminatory tactics, including application of land use laws.

120. Defendants are using land use regulations to deny GSIC its right to exercise it religious practices.

121. Indeed, Defendants are purposefully applying arbitrary, erroneous, and biased calculations and rules upon GSIC simply because it intends to hold religious instruction, despite the fact that the religious instruction is part time, and does not exceed the capacity of the persons permitted under the pre-approved filings.

122. The purpose, intent, and effect of Defendants’ actions is to inhibit and prohibit the exercise of religion.

123. Defendants continue to threaten to close down GSIC due Defendants’ refusal to issue them a certificate of occupancy.

124. Defendants have used the land use regulation to prohibit GSIC to occupy the Mosque lawfully.

125. Furthermore, Defendants issued a tax bill of nearly $50,000 to GSIC despite knowing that it was a tax exempt institution.

126. Defendants refuse to rescind the tax bill and are engaging in collection activity.

127. This is yet another way the Defendants continue to harass and threaten GSIC in order to discourage it from practicing its faith freely as required by our laws.

128. Defendants claim that GSIC did not submit documentation for 2015 that it was tax exempt.

129. In fact, the Defendants had at all times GSIC's tax exemption documents for all relevant years.

130. When GSIC re-submitted the documentation that the Defendants already had regarding its tax exempt status, the Defendants claimed that the submission was untimely.

131. No other religious institution is required to submit documentation on a yearly basis as the Defendants have required by the Defendants.

132. Indeed, Defendants know that GSIC is tax exempt, as they did not charge GSIC tax in the years prior to or after 2015.

133. Nonetheless, Defendants have imposed and are seeking to collect nearly $50,000 in taxes that they knew should not be due.

134. The Defendants actions violate GSIC's rights to freedom of religion and to practice their faith and imposed an unreasonable burden on the practice of their faith.

135. The tax imposed by the Defendants is unlawful and must be declared a nullity and voided.

136. Defendants' denial of Plaintiff's septic system permit application, and the rescinding of Plaintiff's previously approved septic system permit, was arbitrary, capricious, unreasonable, unlawful, irrational, shocking to the conscience and done without a valid legal basis

137. Defendants are violating Plaintiff's civil rights in violation of 42 U.S.C. Section 1983, by their actions as set forth above, including but not limited to:

A. acting under color of law to unlawfully deprive Plaintiff and its members of their state and federal rights to freely practice their religious beliefs, their right to religious assembly and/or their rights to equal protection and substantive due process under the New Jersey and United States Constitutions, including, without limitation, the Fourteenth Amendment to the United States Constitution; and

B. acting under color of law to unlawfully interfere with Plaintiff's and its members' exercise of their state and federal rights and their right to freely practice their religious beliefs through threats, intimidation and coercion.

**COUNT I-RLUIPA-SUBSTANTIAL BURDEN**

138. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

139. Defendants' treatment and denial of GSIC's septic permit and certificate of occupancy requests constitutes the imposition or implementation of a land use regulation that imposes a substantial burden on GSIC's religious exercise, which burden is not in furtherance of a compelling governmental interest and/or is not the least restrictive means of furthering such interest, in violation of RLUIPA, 42 U.S.C. Section 2000cc(a)(1).

**COUNT II-RLUIPA-EQUAL TERMS**

140. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

141. Defendants' treatment of GSIC and its denial of GSIC's septic permit and certificate of occupancy, as well as its rescinding of GSIC's existing permits, constitutes the imposition or implementation of a land use regulation that treated, and continues to treat, GSIC on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. Section 2000cc(b)(1).

**COUNT III-RLUIPA-DISCRIMINATION**

142. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

143. Defendants have treated GSIC and its septic permit and certificate of occupancy applications differently from other such applications on the basis of religion or religious denomination, in violation of RLUIPA, 42 U.S.C Section 2000cc(b)(2).

**COUNT IV-NEW JERSEY LAW AGAINST DISCRIMINATION**

144. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

145. Defendants are violating Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by its actions as set forth above, including, but not limited to:

A. regulating land use in a manner that discriminates against Plaintiff and its members;

B. unlawfully denying and otherwise making the requested septic permit and certificate of occupancy unavailable to the Plaintiff and its members because of their religious creed, beliefs, denomination and/or affiliation;

C. illegally regulating septic permitting and certificate of occupancy requirements in a manner that discriminates against Plaintiff and its members on the basis of religious creed, beliefs, denomination and/or affiliation.

**COUNT V-NEW JERSEY CIVIL RIGHTS ACT**

146. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

147. Defendants' denial of Plaintiff's septic system permit and certificate of occupancy applications, and the rescinding of Plaintiff's previously approved septic system permit, was arbitrary, capricious, unlawful, irrational, shocking to the conscience and done without a valid legal basis

148. Defendants are violating Plaintiff's civil rights in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 through 10:6-2, by their actions as set forth above, including but not limited to:

A. acting under color of law to unlawfully deprive Plaintiff and its members of their state and federal rights to freely practice their religious beliefs, their right to religious assembly and/or their rights to equal protection and substantive due process under the New Jersey and United States Constitutions, including, without limitation, the Fourteenth Amendment to the United States Constitution; and

B. acting under color of law to unlawfully interfere with Plaintiff's and its members' exercise of their state and federal rights and their right to freely practice their religious beliefs through threats, intimidation and coercion.

**COUNT VI. VIOLATION OF THE UNITED STATES CONSTITUTION: GSIC'S DUE PROCESS RIGHTS**

149. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

150. At all relevant times, the Defendants were acting under color of law.

151. Defendants' actions of unlawfully revoking GSIC's permits without any hearing or process.

152. The revocation violates the Due Process clause as GSIC is entitled to process relating to their permits.

153. GSIC was deprived of process in order to unlawfully discriminate against them and cover up the discriminatory actions of the Defendants.

**COUNT VII- VIOLATION OF THE UNITED STATES CONSTITUTION-FREE EXERCISE OF RELIGION: FIRST AND FOURTEENTH AMENDMENTS**

154. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

155. Defendants' actions as alleged herein violate GSIC's right to free exercise of religion.

156. Defendants have violated GSIC's rights under the Free Exercise clause by imposing a substantial burden upon the exercise of GSIC's religion.

157. The substantial burden has been imposed by the discriminatory and arbitrary revocation of GSIC's permit, imposition of inapplicable requirements upon them, and taxing them unlawfully.

**COUNT VIII-VIOLATION OF THE NEW JERSEY CONSTITUTION-FREE EXERCISE OF RELIGION**

158. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

159. Article I, Paragraph 3 of the New Jersey Constitution guarantees the free exercise of religion.

160. Defendants' actions as alleged herein violate GSIC's right to free exercise of religion.

161. Defendants have violated GSIC's rights under the Free Exercise clause by imposing a substantial burden upon the exercise of GSIC's religion.

162. The substantial burden has been imposed by the discriminatory and arbitrary revocation of GSIC's permit, imposition of inapplicable requirements upon them, and taxing them unlawfully.

**<u>COUNT IX-VIOLATION OF THE UNITED STATES CONSTITUTION FOURTEENTH AMENDMENT-EQUAL PROTECTION</u>**

163. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

164. The Defendants' conduct as described herein violated and continue to violate GSIC's rights under the Equal Protection Clause by intentionally treating GSIC differently from other entities on the basis of religious belief.

165. Defendants' unlawful conduct includes, but is not limited to, treating GSIC's differently in the permitting of a septic system and certificate of occupancy, unilaterally revoking their permits, and taxing them despite their tax exempt status.

**<u>COUNT X- VIOLATION OF THE NEW JERSEY CONSTITUTION-EQUAL PROTECTION</u>**

166. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

167. The Defendants' conduct as described herein violated and continue to violate GSIC's rights under the Equal Protection Clause, Article I, Paragraphs 1 and 5, by intentionally treating GSIC differently from other entities on the basis of religious belief.

168. Defendants' unlawful conduct includes, but is not limited to, treating GSIC's differently in the permitting of a septic system and certificate of occupancy, unilaterally revoking their permits, and taxing them despite their tax exempt status.

**COUNT XI- NEW JERSEY MUNICPAL LAND USE LAW**

169. Plaintiff re-alleges and incorporates herein by reference all paragraphs as if alleged herein.

170. N.J.S.A. Section 40:55 D-1 and New Jersey common law prohibit a municipality from exercising its land use powers in a manner that is arbitrary, capricious, or unreasonable, and not supported by substantial evidence.

**RELIEF SOUGHT AS TO ALL COUNTS**

**WHEREFORE**, Plaintiff prays that the Court enter an order that:

A. Declaratory Judgment and Order that the Defendants' continued denial of GSIC's individual septic permit and certificate of occupancy, and the rescinding of

GSIC's previously approved septic system permit, as alleged herein, violate RLUIPA and its Constitutional Rights;

B. Declaratory Judgment and Order that the Defendants' Declares that the Defendants' continued denial of GSIC's individual septic permit and certificate of occupancy, and the rescinding of GSIC's previously approved septic system permit, as alleged herein, is arbitrary, capricious, unreasonable and without a valid governmental purpose;

C. Enjoins the Defendants and all other persons in concert or participation with Defendants, from refusing to issue all necessary permits for GSIC's septic system and certificate of occupancy by:

1. Imposing a substantial burden on the religious exercise of GSIC and its members that is not narrowly tailored to further a compelling governmental interest;

2. Treating GSIC and its members on less than equal terms with nonreligious assemblies or institutions; and

3. Discriminating against GSIC and its members on the basis of religion or religious denomination.

D. Enter a temporary restraining order and/or preliminary and permanent injunctions enjoining the Defendants, as well as all other officers, employees, agents and attorneys of the City of Vineland, and all persons in active concert or participating with any of them, from interfering with the operation of GSIC's house of worship and religious

facility located at 700 Bird Street, Vineland, New Jersey 08360 also known as Block 2008, Lots 6 and 17 on the City of Vineland Tax Map;

E. Enter a temporary restraining order and/or preliminary and permanent injunctions enjoining the Defendants, as well as all other officers, employees, agents and attorneys of the City of Vineland, and all persons in active concert or participating with any of them from unlawfully denying, and/or withholding GSIC's septic system permit or any other permit or regulation for the operation of its house of worship and religious facility located at 700 Bird Street, Vineland, New Jersey 08360 also known as Block 2008, Lots 6 and 17 on the City of Vineland Tax Map.

F. Grant an award of reasonable costs and attorneys' fees;

G. Grant an award of compensatory and punitive damages pursuant to RLUIPA, 42 U.S.C. Section 2000cc et seq., the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et sq.; and,

H. Appointment of a federal monitor to oversee Defendants' implementation and compliance with this Court's remedial powers, as well as Defendants continuing compliance with federal law for a period of time determined by the Court;

I. Declaratory Judgment and Order that the existing septic system and all other land use regulations are proper, satisfied and complied with, such that a final Certificate of Occupancy may be issued forthwith.

J. Declaratory Judgment and Order that the actions described above and applications are unlawful and in violation of the Constitutions of the Unites States and New Jersey:

K. Declaratory Judgment and Order that GSIC does not owe any tax and is tax exempt for the year(s) Defendants taxed GSIC;

J. Order other such other relief as the Court deems just and proper.

Dated: February 21, 2017

Respectfully submitted,

s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: 212.391.8500
Fax: 212.391.8508
Email: Aymen@Aboushi.com
www.Aboushi.com

s/ Joel S. Silberman
Joel S. Silberman, Esq.
Law Offices of Joel Silberman
549 Summit Avenue
Jersey City, NJ 07306
Tel. (201) 420-1913
Fax (201) 420-1914
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), the Plaintiff demands a trial by jury of all issues so triable as of right.

## CERTIFICATIONS

In accordance with Local Civil Rule 11.2, I hereby certify that this matter is not the subject of any other action pending in any court, or of any pending arbitration, or administrative proceeding. In accordance with Local Civil Rule 201.1(d)(1) & (2)(A), I certify that this matter is not subject to compulsory arbitration or to mediation because this action is based on an alleged violation of a right secured by the Constitution of the United States, and because the relief sought does not consist of only money damages not in excess of $150,000, exclusive of interest and costs, and any claim for punitive damages.

s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: 212.391.8500
Fax: 212.391.8508
Email: Aymen@Aboushi.com
www.Aboushi.com