UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GARDEN STATE ISLAMIC CENTER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VINELAND, DALE JONES, GARY LUGIANO, CARMEN DI GIORGIO, and JOHN and JANE DOES 1-20,<br><br>Defendants. | : | Hon. Joseph H. Rodriguez<br><br>Civil Action No. 17-1209<br><br>OPINION |

This matter comes before the Court on Motion to Dismiss of Defendants Carmen Di Giorgio, Dale Jones, Gary Lugiano, and City of Vineland pursuant to Fed. R. Civ. P. 12 (b)(6). The United States of America filed a Statement of Interest on September 5, 2017. The Court granted the parties' request to adjourn the motion and set a briefing schedule. Oral argument was heard on March 14, 2018. For the reasons stated on the record that day, as well as those set forth below, Defendants' motion is denied.

## I. Background

Garden State Islamic Center brings a claim against Defendants arising out of its construction of a mosque in Vineland, New Jersey. Garden State Islamic Center ("GSIC") is a New Jersey, not for profit, 501(c)(3) tax exempt corporation, whose primary purpose is to receive, administer, invest and distribute funds for scientific, educational and charitable purposes. The Complaint alleges that the Defendants engaged in unlawful discriminatory practices to frustrate GSIC's ability to exist through a series of predatory actions which continued from the approval of the construction of the GSIC building and mosque through GSIC's present day existence in a manner which

impedes GSIC's ability to serve its community and diminishes the use of the building. The Complaint sets forth, in detail, the nature of the actions taken, which include withholding permit approvals and a final certificate of occupancy in addition to assessing tax liens against GSIC, despite its exemption as a religious institution.

The City's continued denial of the Certificate of Occupancy is allegedly related to GSIC exceeding the output contemplated by the septic system permit. In general terms, the septic system permit was granted based upon the information included in the initial plans submitted. Once GSIC was built, the City inspected GSIC and claims it discovered that the building contained additional uses that were not previously identified in the approved original plans. The additional uses in the new plan and re-design of GSIC caused the contemplated water flow values to increase to a point where the combined flow mandated New Jersey Department of Environmental Protection scrutiny. In other words, because of the allegedly altered design and the City's determination that the re-design increased the output of the septic-system, the City declared that it could not issue a Certificate of Occupancy until GSIC could secure a "flow determination" from the NJDEP's Bureau of Non-Point Pollution Control.

Currently GSIC is operating in a limited manner under the authority of a temporary certificate of occupancy and the Defendants have not moved to collect the assessment of taxes, but the tax bill remains due. Plaintiffs allege violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 1983, the New Jersey Civil Rights Act and the New Jersey Law Against Discrimination. Plaintiffs bring claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. (Counts I, II), and related claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments (Counts

IV, VI). Of the many issues raised by the City in favor of dismissal, the principal issue to be decided is whether this matter is ripe for adjudication in light of the City's contention that GSIC has not exhausted its administrative remedy with the New Jersey Department of Environmental Protection ("NJDEP").

## II. Standards of Review

### A. Federal Rule of Civil Procedure 12 (b) (6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

### B. The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000 cc et seq., "RLUIPA"

Congress enacted RLUIPA " 'in order to provide very broad protection for religious liberty.' " Holt v. Hobbs, ––– U.S. ––––, 135 S. Ct. 853, 859, 190 L.Ed.2d 747 (2015) (quoting Burwell v. Hobby Lobby Stores, Inc., –––U.S. ––––, 134 S. Ct. 2751, 2760, 189 L.Ed.2d 675 (2014)). RLUIPA provides, in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution ... (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).

GSIC, as a plaintiff in a RLUIPA claim, "has the initial burden of demonstrating that the land use regulation 'actually imposes a substantial burden on religious exercise." Muslim Ctr. of Somerset Cty., Inc. v. Borough of Somerville Zoning Bd. of Adjustment, No. SOM-L-1313-04, 2006 WL 1344323, at *6 (N.J. Super. Ct. Law Div. May 16, 2006). Upon such a showing, the burden shifts to the City to show that the challenged regulation "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. Id.

Although RLUIPA does not define "substantial burden," several courts note that "[t]he goal of the substantial burden provision is to combat[ ] subtle forms of discrimination by land use authorities that may occur when a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards." Hunt Valley Baptist Church v. Baltimore County, Maryland, 2017 WL 4801542 at *24 (quoting Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n, 768 F.3d 183, 196 (2d Cir. 2014) (quoting Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin, 396 F.3d 895, 900 (7th Cir. 2005)) (internal citations omitted)).

The substantial burden claim "does not require a showing of discriminatory governmental conduct." Andon, LLC v. City of Newport News, Va., 813 F.3d 510, 514 (4th Cir. 2016); Bethel World Outreach Ministries v. Montgomery Cty. Council, 706

F.3d 548, 557 (4th Cir. 2013) (recognizing that substantial burden provision protects against both discriminatory and non-discriminatory conduct that imposes a substantial burden on religion). To state a substantial burden claim, a plaintiff "must show that a government's imposition of a regulation regarding land use, or application of such a regulation, caused a hardship that substantially affected the plaintiff's right of religious exercise." Andon, 813 F.3d at 514; see also 146 Cong. Rec. S7, 774–01, 2000 WL 1079346, at *S7777 ("It is important to note that RLUIPA does not provide a religious assembly with immunity from zoning regulation.")

Plaintiffs argue that "[i]nvidious motive is not a necessary element," but rather "[a]ll you need is that the state actor meant to single out a plaintiff because of the protected characteristic itself." (Id. at 15 (quoting Hassan v. City of New York, 804 F.3d 277, 297 (3d Cir. 2015)).)

> The land-use provisions of RLUIPA are structured to create a clear divide between claims under section 2(a) (the Substantial Burdens section) and section 2(b) (the Discrimination and Exclusion section, of which the Equal Terms [P]rovision [and also the Nondiscrimination Provision are] a part). Since the Substantial Burden[s] section includes a strict scrutiny provision and the Discrimination and Exclusion section does not, we conclude this "disparate exclusion" was part of the intent of Congress and not an oversight.

Id. (citing Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed.2d 17 (1983)).

RLUIPA's first section ("Substantial Burdens Provision") prohibits land use regulations that substantially burden the exercise of religion unless the government action can survive a strict scrutiny analysis. 42 U.S.C. § 2000cc(a)(1)–(2); see also Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 269 (3d Cir. 2007) ("[T]he Substantial Burden[s] section includes a strict scrutiny provision."). The second section of RLUIPA prohibits discrimination and impermissible exclusion on the

basis of religion by prohibiting three distinct types of regulations: (1) land use regulations that treat a "religious assembly or institution on less than equal terms with a nonreligious assembly or institution" ("Equal Terms Provision"); (2) land use regulations that "discriminate[ ] against any assembly or institution on the basis of religion or religious denomination" ("Nondiscrimination Provision"); and (3) land use regulations that "totally exclude[ ] religious assemblies from a jurisdiction," or "unreasonably limit[ ] religious assemblies, institutions, or structures within a jurisdiction" ("Exclusions and Limits Provision"). 42 U.S.C. § 2000cc(b)(1)–(3). Plaintiffs' instant Motion, as to Count Three, arises under the Nondiscrimination Provision. Islamic Soc'y of Basking Ridge v. Twp. of Bernards, 226 F. Supp. 3d 320, 341 (D.N.J. 2016).

## III. Analysis

The Court finds that Plaintiff has met its burden that this matter is ripe for adjudication. Plaintiff's complaint alleges discrimination the form of the imposition of a land use regulation that imposes a substantial burden on GSIC's religious exercise in violation RLUIPA, the New Jersey Law Against Discrimination, the New Jersey Civil Rights Act, the First and Fourteenth Amendments, New Jersey Constitution, and New Jersey's Municipal Land Law. See Compl. Generally, Counts I-XI.

### A. Ripeness

The Court first addresses the Defendants' primary issue of whether the claims are ripe for consideration. This inquiry considers whether the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Railway Mail Ass'n v. Corsi, 326 U.S. 88, 93, 65 S. Ct. 1483, 1487, 89 L. Ed. 2072 (1945). Whether a

case is ripe for justiciability is a prerequisite to the court's exercise of jurisdiction. Nextel Communications of the Mid–Atlantic, Inc. v. City of Margate, 305 F.3d 188, 192 (3d Cir. 2002).

"The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels' abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Peachlum v. City of York, Pennsylvania, 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted). "The ripeness doctrine prevents judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 575 (3d Cir. 2003).

Plaintiff bears the burden of establishing that a matter is ripe for adjudication by showing a specific present objective harm or the threat of specific future harm. Laird v. Tatum, 408 U.S. 1, 14 (1972). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United State, 523 U.S. 296, 300 (1998) (internal citations omitted). Here, Plaintiff must show that it has suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted).

The ripeness argument here is intertwined with the Court's consideration of the cognizability of Plaintiffs' claims under RLUIPA. The claims are ripe because the Court concludes that the sewage permitting issue, as plead, makes out a claim that the permit "issue" is really a pre-text for discrimination. The fact that a final decision on the merits of the water flow and sewage permit has not been made because the matter has been

referred for determination by the EPA does not render the discriminatory use of that process by the City unripe. To the contrary, the issuance of a final decision being held in abeyance is the very essence of the claim: that the invocation of the process was done with intent to frustrate GSIC's existence.

In a factually similar case, Cnty. of Culpeper, Virginia, 245 F. Supp. 3d at 764–65, the district court considered the ripeness of a claim under RLUIPA where the Islamic Center of Culpeper's (ICC) attempt to build a mosque was frustrated by a permitting process. There, the town board had yet to issue a final decision on the permit application on grounds that the permit application was "insufficient[.]" United States v. Cty. of Culpeper, Virginia, 245 F. Supp. 3d 758, 764–65 (W.D. Va. 2017). The board further alleged that the deficiencies in the application made it "incumbent upon the ICC to resubmit an application (or explore some other method) rather than sue." Id. The Court disagreed holding that the claims were ripe despite the lack of a final decision in the actual permit application because it was the disparate use of the application process that formed the basis for the RLUIPA claim.

In addition, the County's argument was deemed specious in light of the fact that it had previously stated on the record that the ICC's application did satisfy all state and local requirements. The court further noted as compelling "the low showing required for permit approval in the past; the historically high approval rate, including to other commercial and religious entities; the atypical delay in considering the ICC's initial application; the statements by County officials that the ICC's application received heightened scrutiny; the County Administrator's prepared remarks that the ICC's application satisfied state law and local practice, and; anti–Muslim comments and pressure directed at Board members before their vote." Id. at 765-66.

The district court concluded that the matter was ripe because the process impacted ICC's ability to build a mosque and/or caused "significant delay and added expense to that effort, either of which flowed from a purportedly discriminatory decision that substantially burdens the ICC's religious exercise." Id. "A reasonable fact-finder could conclude that the denial was not based on an insufficient application or other good-faith reasons, but rather on anti–Muslim prejudice that would not evaporate simply by resubmitting a new application." Id. at 765 (citing Moore–King v. Cty. of Chesterfield, Va., 819 F.Supp.2d 604, 615–17 (E.D. Va. 2011) (explaining that Williamson County did not apply when facts indicated what would occur if plaintiff pursued additional procedures), aff'd, 708 F.3d 560 (4th Cir. 2013); Bikur Cholim, Inc. v. Vill. of Suffern, 664 F.Supp.2d 267, 274–75 (S.D.N.Y. 2009) (holding that RLUIPA claimant need not avail itself of additional procedures if they would be "futile" and that court need only locate "a final, definitive position from a local authority" for ripeness)).

GSIC's Complaint sets forth an almost identical predicament as that faced by ICC in Culpeper. In support of its ripeness argument, GSIC proffers as follows:

> 1. No other secular or religious group has had these requirements imposed upon them by Vineland.
> 2. No other secular or religious group has had these water flow calculations imposed upon them as Vineland has imposed on GSIC.
> 3. No other secular or religious group has had their pre-approved septic permit unilaterally rescinded after it was issued and after construction was complete without any due process.
> 4. No other secular or religious group has had their certificate of occupancy withheld in this fashion.
> 5. The water flow calculation requirements imposed by the Defendants is a novel way to use a land use regulation to unlawfully deny GSIC its lawful existence on the land.
> 6. In essence, Vineland was using false information and discriminatory
> 7. Indeed, a similarly situated Christian Church was not subject to the same requirements, and in fact, received more favorable treatment.

8. Upon information and belief, the Cumberland County Department of Health has within the last 18 months approved a septic system for the "All The Nations Assembly Church of God", located at 659 Landis Avenue in Deerfield Township, Cumberland County, which is a substantially larger facility than GSIC's house of worship/religious education building that can seat 470 people, also contains classrooms, a nursery, offices and has an area identified as a "future kitchen" as indicated on the approved building plans for that church.

9. This Church based its septic flows on a calculation of 3 gallons per day, which calculation was accepted by the Cumberland County Department of Health and this Church was thus not required to obtain a NJPDES Permit and a septic permit was issued locally by the County.

10. This Church also has a full time nursery and daycare, kitchen, Sunday school, kitchen, and 500 members, but was still adjudicated to have less than 2,000 gallons per day waste and permitted to use a septic system without State involvement or waste management systems.

11. GSIC, on the other hand, with less than half as many occupants, no daily school or nursery, and a Sunday school attended by a handful of children, a simple warming kitchen, was determined by the Defendants have a water usage of over 3,000 gallons per day, requiring State involvement, a waste management plan and treatment facility.

See Compl., ¶¶ 104-110.

For these reasons, GSIC claims that the Defendants' actions are discriminatory in nature and are intended to prevent the GSIC from permanently opening and operating its house of worship/religious education building through the discriminatory application of land use regulations, in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. 2000cc, et seq. ("RLUIPA") and the Constitutions of the United States and New Jersey. Plaintiff alleges that the City continually changed the requirements for the septic system, which they previously approved, for discriminatory purposes. That claim exists independent of whether the City retains current jurisdiction over the alleged septic flow issue and is ripe for consideration.

B. The Complaint Sets Forth a Cognizable Claim under RLUIPA

There are several issues attendant with the Court's consideration of whether the Complaint sets forth a cognizable claim under RLUIPA. First, the Court finds that the City's application of the sewage permit process qualifies as a "land use" regulation that "limits or restricts" GSIC's functionality and use of its land within the meaning of RLUIPA, 42 U.S.C. §2000cc-5(5). Under RLUIPA, a "land use regulation" is "a zoning or landmarking law ... that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has a ... property interest in the regulated land ..." Id. at § 2000cc–5(5). Thus, "a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." Prater v. City of Burnside, 289 F.3d 417, 434 (6th Cir. 2002). Second Baptist Church of Leechburg v. Gilpin Twp., Pennsylvania, 118 F. App'x 615, 617 (3d Cir. 2004).

Much like the facts set forth in Cnty. of Culpeper, Va., ---F. Supp.3d---, No. 16-00083, 2017 WL 1169767, the present Complaint details that GSIC's attempt to build a mosque in the City was met with procedural hurdles at every step. See Compl. at ¶ 17. Initially, the site plan was rejected by the City's Planning Board causing GSIC to initiate a lawsuit seeking the reversal of the denial. Id., ¶ 18. The litigation settled and on January 12, 1022, the final major site plan was approved by the City. Id., ¶ 20. The site plan contemplated "a three-level, 61,540 square foot house of worship consisting of: a) a 9,563.25 square foot basement level containing a bathroom, kitchen, mechanical room and storage space; b) a 30,304.45 square foot first floor level containing a men's prayer hall, women's prayer halls, multi-purpose hall, library, media rooms and various

meeting rooms and offices; and c) a 21,670.45 square foot second floor level containing multiple lecture rooms, offices, a library, meeting room and other miscellaneous space on the Property (the "2011 Site Plan Approval")." Id., ¶ 20. The seating capacity of GSIC accommodated 220 persons. Id., ¶ 21.

Before construction began, the parameters of the building were reduced by GSIC. GSIC sought and obtained an administrative site plan approval from the City which removed the basement level all together and reduced the square footage of the floor plans significantly. Id., ¶ 23. This new site plan (the "2012 Amended Site Plan Approval"), is the blueprint of the building that actually exists today and, unlike the 65,140 square foot building approved in 2011, the current building is only 8,393 square feet. Id., ¶ 24.

Against this backdrop, the Complaint alleges that the septic system issue was created out of whole cloth in an attempt to frustrate GSIC's existence and functionality. The septic system permit the City issued as to the 2011 Site Plan was designed to accommodate a maximum sanitary sewage flow capacity of 3,000 gallons per day. Id., ¶ 25. GSIC alleges that the current building's anticipated sewage flow is estimated to be approximately 1500 gallons per day; far less than that approved by the City in 2011. In late 2012, GSIC's contractor received an approval letter from the City advising that the septic system was "inspected and approved" as per the land use codes and regulations. Id., ¶ 27.

After the City issued the temporary certificate of occupancy, GSIC began, in early Spring 2016, the process of pursuing permits for an additional second floor level structure anticipated to have the same square footage of the existing building. Id., ¶¶ 28-29. The uses identified for the addition are alleged to be similar in usage to the 2011 Site

Plan and consisted of several rooms including locker and toilet rooms, but no showers. Id., ¶¶ 31-34. However, GSIC received a letter from the City regarding the septic system for the addition. The findings of the City appeared to be grounded upon a misunderstanding that the "original septic system was designed for a 500 seat mosque[]" and that the proposed locker rooms included showers. Id., ¶¶ 33-37. The existing structure remained at a capacity of 220 seats despite the proposed addition, not 500 seats. The letter concludes by stating that the City "belie[ves] that the addition causes the original septic system design capacity to exceed that permitted and required GSIC obtain a "flow determination" from the New Jersey Department of Environmental Protection's Bureau of Non-Point Pollution Control." Id., ¶ 38.

Because of this determination, GSIC is unable to obtain a final Certificate of Occupancy, despite many attempts to disprove the City's flow determinations by providing evidence in the form of letters from industry professionals, common sense math applications, and blueprints showing that its septic system did not exceed 1,500 gallons[1] or exceed the use in the approved septic system for which the City issued a permit. Id., ¶¶ 40-43.

GSIC and its contractors supplied proof that the building did not exceed the flow values which trigger State review. The City also engaged in meetings and conversations related to the issue but did not include anyone on behalf of GSIC and, in these occurrences, continued to mischaracterize significant facts related to the usage of the proposed space and the plans previously approved by the City in 2011. Id., ¶¶ 48-53.

[1] According to the Complaint, a flow of 2,ooo gallons triggers State review.

GSIC's project architect David Manders' letter to Vineland City Health Department Director Dale Jones details the anomalies used by the City in its determination. In that e-mail, Mr. Manders states:

> "There is a misconception in these documents that needs to be remedied, and it is as follows:
>
> What exists at the site is a two-story building with a footprint of 8,393.12 square feet. There is no basement. The first floor is finished and the applicant is seeking to finish the second floor. The numbers outlined in Gary Lugiano's email of April 21, 2016 do not reflect at all what is built or what the applicant has sought building department approval for. The applicant is seeking approval to finish the second floor of this building only. If (and when) the applicant seeks to do additional construction, permits and approvals will need to be obtained. Our position is simple...to determine if the septic system that was installed previously is sufficient to allow for the finishing of the second floor in conformance with the documents prepared by our office. It is not the applicant's desire to construct the 61,538.15 sf building noted in Gary's email. While the approved site plan indicates a building of this magnitude, the applicant has not sought approval for permits to construct this building (which was projected to be accomplished in multiple phases and may or may not ever be built). The applicant fully realizes that any future applications for building additions will most likely require an upgrading of the current septic system. I would hope that this clarification finds its way to the NJ
>
> Department of Environmental Protection so that a determination can be made based on the actual conditions that exist and are proposed. As always, please do not hesitate to contact me with any questions.

Id., ¶ 57.

Despite this letter, the City continued to challenge the flow calculations using erroneous information in support of its conclusion that State review was warranted. GSIC argues that the misinformation upon which the City based its findings, coupled with the "arbitrary" flow calculations the City ascribed to the building evidence discrimination in the form of a RLUIPA violation. GSIC contends it is being "held to higher standards for the septic system than was in the plans, previously approved by Vineland, simply to discriminate against them and prohibit their lawful expansion. GSIC argues that the misinformation upon which the City based its findings, coupled with the

"arbitrary" flow calculations the City ascribed to the building evidence discrimination in the form of a RLUIPA violation. Id., ¶¶ 53-56.

By characterizing the flow calculations in a manner which compels State review, the City is forcing GSIC to incur additional expenses and engage in additional expenses associated with that process, delay the full enjoyment of GSIC, and to keep GSIC under its thumb. Id., ¶¶ 69. Likewise, if GSIC does not challenge the State on review, the costs associated with the installation and maintenance of a waste water treatment facility is a prohibitively expensive proposition which further serves to frustrate the GSIC's utility. As a result, GCIS contends that the City's tactics associated with the septic system permit process in the land use of GCIS's property is discriminatory and burdensome and evidences an effort to deny GSIC the permits needed to grow their facility. Id., ¶¶ 70-87.

Construing the language of RLUIPA broadly, because the sewage regulation at issue is incorporated by reference into the City's Land Use Ordinance, it qualifies as a zoning law. §425-1 to -371. To hold otherwise would put form over function. As in Cnty. of Culpeper, VA., the permit here is granted as a matter of course and was previously approved for a building of greater capacity and function. The County of Culpeper's denial of a routine permit left the district court with the impression that the denial was based on religious hostility. In reaching its conclusion that the permit in Culpeper fits within the ambit of RLUIPA as a zoning law, the district court highlighted "the text of RLUIPA, precedent from the Fourth Circuit and other courts, the structure of the County's own laws, and how the permit process was (allegedly) used here to restrict property that otherwise allowed religious uses as of right." Cnty. of Culpeper, Virginia, 245 F. Supp. 3d at 760.

The permit here is unlike the ordinance considered in Second Baptist Church of Leechburg v. Gilpin Twp., Pennsylvania, 118 F. App'x 615, 616 (3d Cir. 2004) where the Third Circuit held that ordinance at issue did not "fall within the RLUIPA definition of a "land use regulation" because the mandatory sewer tap was not enacted pursuant to a zoning or landmarking law." There, Gilpin Township Ordinance No. 53, commonly referred to as a "mandatory tap-in ordinance[,]" required all principal buildings located within one hundred fifty feet of any sewer of the sewage system to connect to the sewage system. The Second Baptist Church sued under RLUIPA arguing that the mandatory tap in ordinance was a zoning law which impermissibly infringed on its right to exist. The Third Circuit rejected that argument on the basis that the Ordinance did not directly involve any zoning or landmarking considerations and, therefore, did not fall within RLUIPA even under broad terms. Second Baptist Church of Leechburg v. Gilpin Twp., Pennsylvania, 118 F. App'x 615, 617 (3d Cir. 2004). Because the Ordinance was mandatory and not subject to zoning usages, the ordinance did not fall within RLUIPA's broad protection.

The Court finds unpersuasive the City's application of Second Baptist Church of Leechburg, 118 F. App'x at 617 to the sewage permit. The permit at issue here is similar to that considered by Cnty. of Culpeper, VA. in form and application. The mandatory nature of, and the lack of zoning considerations commensurate with, the "tap in" ordinance of Second Baptist Church of Leechburg renders that decision inapplicable to the present case. The Court finds that the sewage permit issue is a zoning law subject to RLUIPA.

On a motion to dismiss pursuant to Fed. R. 12 (b)(6), the Court accepts as true all of the allegations contained in a complaint which show an entitlement to relief. The

complaint sufficiently sets forth facts demonstrating that the Defendants application of the sewage permitting process places a "substantial burden" on the Plaintiffs' in violation of RLUIPA. The City's motion to dismiss is denied as to this claim.

C. The Remaining Claims

Defendants' motion to dismiss the remaining constitutional claims is denied. The Equal Protection Clause of the Fourteenth Amendment demands that no State shall "deny to any person within its jurisdiction the equal protection of the laws[.]" City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection Clause prohibits "governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Put differently, the Clause ensures that persons similarly situated are treated alike. City of Cleburne, Texas, 473 U.S. at 439. The Complaint sufficiently sets forth facts which tend to show that GSIC was treated differently from other Christian buildings within the city limits. Comp. at ¶¶ 102-110. Giving all favorable inferences to Plaintiffs, there are sufficient facts plead demonstrating that the Defendants intended to discriminate. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264–66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244–45 (1976). Defendants' motion to dismiss the Equal Protection Claim is denied.

Defendants' motion to dismiss Plaintiffs' First Amendment Right to the Free Exercise of Religion claim is denied for the same reasons set forth with respect to the denial of the motion to dismiss Plaintiffs' RLUIPA claim. RLUIPA provides "'greater protection' for religious liberty than is provided by the First Amendment." Payne v. Doe, No. 15-2489, 2016 WL 123624, at *4 (3d Cir. Jan. 12, 2016). For the same reasons

underscoring the Court's decision with respect to the RLUIPA claim, Defendants' Motion to dismiss the First Amendment claim and the related claim under the New Jersey Law Against Discrimination, N.J.S.A. 10-5-3 is denied.

Defendants' motion to dismiss Plaintiffs' due process claims and the unlawful taxation claim is denied. As construed in a light most favorable to Plaintiffs, the Complaint sets forth a cognizable claim under the Fourteenth Amendment for failure to provide notice and a hearing before Defendants revoked the permit and sets forth an adequate foundation for the improper assessment of taxes against a religious institution. The Complaint sufficiently sets forth facts, which if believed, demonstrate that the Defendants' insistence that NJDEP review is necessary is a pretext for discrimination and a basis for Defendants' to revoke the permit without providing a hearing.

In addition, according to the Complaint, the assessment of taxes was levied for the year 2015 because the Township, without notice, deemed the structure "completed[,]" as defined by N.J.S.A. 54:4-63 et seq., because it was "substantially ready for the intended use for which a building or structure is constructed, improved or converted." N.J.S.A. 54:4-63-1; Compl. ¶¶ 125-35. Plaintiffs argue that it applied for tax exempt status as a religious organization and that even if it had not, the Defendants were aware of the religious affiliation prior to assessing taxes. Id. In addition, the Plaintiffs claim that the paradox of Defendants' position—namely that it deemed the structure "complete" for tax purposes but continued to withhold a final Certificate of Occupancy— coupled with the fact that GSIC was the only religious organization in the township required to apply for the religious exemption evidences discrimination. Id. Defendants' motion to dismiss is denied.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss is denied. An appropriate Order shall issue.

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
United States District Judge